IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:18-CV-197-RJ

CARRIE ETTA MOSLEY,

    Plaintiff/Claimant,

v.

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-21, -23] pursuant to Fed. R. Civ. P. 12(c). Claimant Carrie Etta Mosley ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefing has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant filed applications for a period of disability, DIB, and SSI on July 20, 2015, alleging disability beginning June 10, 2015. (R. 18, 182–91). The claims were denied initially and upon reconsideration. (R. 18, 54–99). A hearing before an Administrative Law Judge ("ALJ")

was held on March 23, 2017, at which Claimant, represented by counsel, appeared and testified. (R. 33–53). On May 18, 2017, the ALJ issued a decision denying Claimant's request for benefits. (R. 15–32). On August 28, 2017, the Appeals Council denied Claimant's request for review. (R. 4–9). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her

findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred by (1) failing to obtain evidence from a

3

Vocational Expert ("VE") at step four, and (2) improperly evaluating the RFC. Pl.'s Mem. [DE-22] at 13–25.[1]

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 20). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease and degenerative joint disease of the bilateral knees. *Id.* The ALJ determined Claimant's hypertension, hyperlipidemia, gastroesophageal reflux disease, and anxiety were nonsevere impairments, and her dizziness and vertigo were not medically determinable impairments. (R. 20–21). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22–23). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in no limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 21).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding that Claimant had the ability to perform a full range of medium work.[2] (R. 23–27). In making this assessment, the ALJ found Claimant's statements about the intensity,

---

[1] The page numbers referenced are those found in the CM/ECF footer, which differ from the internal page numbers in Claimant's memorandum [DE-22].
[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. 24). At step four, the ALJ concluded Claimant was capable of performing her past relevant work as a public health nurse and registered nurse as actually performed. (R. 27–28).

## V. DISCUSSION

### A. The Failure to Consult a VE at Step Four

Claimant contends the ALJ erred by failing to obtain evidence from a VE at step four on the issue of whether Claimant was capable of performing her past relevant work. Pl.'s Mem. [DE-22] at 13–18. The Commissioner contends it was unnecessary for the ALJ to utilize a VE at step four, and the ALJ properly assessed the demands of Claimant's past relevant work. Def.'s Mem. [DE-24] at 4–13.

The regulations provide that in determining whether a claimant can perform past relevant work, the ALJ *may* consult a VE or other resources such as the Dictionary of Occupational Titles. 20 C.F.R. § 404.1560(b)(2), 416.960(b)(2); *see Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) (concluding that "vocational expert testimony is not required at step four where the claimant retains the burden of proving she cannot perform her prior work" and "is not required until step five when the burden shifts to the Commissioner, and then only when the claimant has nonexertional impairments . . . .") (citations omitted); *Aurand v. Astrue*, No. 6:07-3968-HMH-WMC, 2009 WL 364389, at *5 (D.S.C. Feb. 12, 2009) (explaining that at step four if the ALJ determines a claimant suffers from significant nonexertional limitations, the ALJ *should* consider whether the testimony of a VE would be helpful in determining whether the claimant can perform past relevant work, but at step five the ALJ *must* obtain the testimony of the VE as to the impact

of nonexertional limitations). In determining whether a claimant can perform her past relevant work, the Commissioner "will ask [the claimant] for information about work [she] ha[s] done in the past," "may also ask other people who know about [the claimant's] work," and "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence [] need[ed] to help [] determine whether [a claimant] can do [her] past relevant work, given [her] residual functional capacity." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). "The claimant is the primary source for vocational documentation." S.S.R. 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982).

At the administrative hearing, Claimant testified that she had been a registered nurse in different areas but mainly in public health for the past fifteen years. (R. 40). During that time, Claimant was actively treating or working with patients. *Id.* Claimant also completed a Work History Report listing seven different nursing jobs she worked between 1998 and 2015, to wit: Administrative Clinical Public Health RN, Clinical RN I, RN Night Shift Supervisor, Home Health RN, Staff RN, and Certified Nursing Assistant I and II. (R. 242).

At step four the ALJ determined as follows:

> The claimant reported that she worked as a public health nurse from June 2008 through June 2015. She also reported that she worked as a registered nurse for several different employers from July 1998 through December 2003 and from April 2004 through April 2008 (Exhibit 5E). Earnings records reveal that the claimant's wages from 1998 through 2015 reached the level of substantial gainful activity (Exhibit 6D). I find that pursuant to the regulations, the claimant's work as a public health nurse and registered nurse constitutes past relevant work.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually performed. In her description of job duties when she was working as a public health nurse and registered nurse, the claimant indicated that she was required to lift, walk,

6

stand, and sit within the range of work at the medium exertional level.

(R. 28).

The ALJ appropriately relied on the information Claimant provided in the Work History Report to determine that Claimant could perform her past relevant work as actually performed. *See Boler v. Colvin*, No. 1:10-CV-451, 2013 WL 5423647, at *3 (M.D.N.C. Sept. 26, 2013) ("[A]n ALJ must rely on at least one of the following two sources to 'define a [plaintiff's] past relevant work as actually performed: a properly completed vocational report, SSR 82-61, and the claimant's own testimony, SSR 82-41.'" (internal citation omitted)); S.S.R. 82-61, 1982 WL 31387, at *1–2 (Jan. 1, 1982). Claimant worked as an Administrative Clinical Public Health Registered Nurse for the Mobile County Health Department from June 2008 to June 2015. (R. 242). Claimant was assigned to the WIC Department dealing with the provision of formula for infants. (R. 243). Claimant interviewed patients who were previously qualified for benefits before they saw a nurse, provided documentation, prepared for audits, attended continuing education, and for a "minimal time" supervised other employees. (R. 243, 249). Claimant indicated that the job required critical thinking and physical requirements of walking for two hours, standing for two hours, and sitting for four hours; sometimes kneeling and crouching; handling, grabbing, or grasping big objects; writing, typing, or handling small objects; reaching for boxes of formula; and lifting boxes of formula weighing no more than ten pounds. *Id.* The ALJ found that Claimant could perform a full range of medium work (R. 23) and that the requirements of Claimant's job as she described it in the Work History Report fall within the RFC. *See Hagan v. Colvin*, No. CV 5:15-2194-DCN-KDW, 2017 WL 9288218, at *9 (D.S.C. Jan. 24, 2017) (finding no error at step four where the ALJ properly relied on the claimant's work history report to determine the demands of her past

7

relevant work, made findings of fact as to the claimant's RFC, and determined her RFC would permit her to return to her past relevant work), *adopted sub nom.*, *Hagan v. Berryhill* 2017 WL 1190878 (D.S.C. Mar. 31, 2017); *Clow v. Comm'r of Soc. Sec.*, No. 1:13-CV-998 GLS, 2015 WL 729697, at *3 (N.D.N.Y. Feb. 19, 2015) (finding no error in the ALJ's determination that the claimant could return to his past work as actually performed based on the information the claimant provided in his Work History Report); *Rose v. Comm'r of Soc. Sec.*, No. 13 CIV. 4021 KPF, 2014 WL 3582887, at *11 (S.D.N.Y. July 18, 2014) (finding no error in the ALJ's determination that the claimant's prior work fit with her RFC based on the information in claimant's work history report about her past work). Accordingly, the ALJ did not err in failing to obtain VE testimony at step four.

## B. The RFC Determination

Claimant alleged two errors implicating the RFC determination: (1) failure to appropriately evaluate Claimant's subjective statements regarding her non-exertional limitations, and (2) failure to account for Claimant's inability to afford treatment. Pl.'s Mem. [DE-22] at 18–25.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an

individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ, and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted).

When assessing a claimant's RFC, it is within the province of the ALJ to determine whether a claimant's statements are consistent with the medical and other evidence. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes that determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 16-3p, 2016 WL 1119029, at *4; *Hines*, 453 F.3d at 564–65.

Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors concerning the "intensity, persistence and limiting effects" of the claimant's

9

symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (showing a complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence, *Craig*, 76 F.3d at 595– 96, but neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." S.S.R. 16-3p, 2016 WL 1119029, at *6; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

> The ALJ summarized Claimant's hearing testimony as follows:
>
> At the hearing, the claimant testified that she stopped working in June 2015 because she was missing 2 to 3 days of work per month due to headaches, difficulty speaking understandably, chronic back pain, left leg limpness and right leg pain. The claimant most often missed work due to her back pain. The claimant has cervical stenosis that causes her hands to jerk more often. Some days, her back pain was so severe that she had difficulty getting out of bed and making it to the bathroom. The claimant can lift nothing heavier than a gallon of milk. She recently had a right hip X-ray, which revealed arthritis. The claimant's current treatment for her back and neck includes muscle relaxers and pain medications. She has side effects of sleepiness from her medications. Her blood pressure is generally controlled with medications, other than when she has severe pain about 4 or 5 times per month. The claimant then has to lay down. She limps sometimes due to knee pain. The claimant has severe pain at least 5 out of 7 days. The claimant is able to stand for 10 to 15 minutes before she has to sit down. At times, she is afraid she will fall. She can walk less than a block. Sometimes the claimant has dizzy spells, although they occur less frequently with her medication. The claimant lives with her sister, who does most of the cooking. The claimant is able to clean the bathroom, but has to take frequent breaks to sit down. She also cleans the den and does her own laundry. She performs activities of personal care independently and is usually able to drive. The claimant estimated that she has about 15 bad days out of the month. On bad days, the claimant cannot drive and spends most of the day in bed. If she has an appointment, her sister drives her.

(R. 24). The ALJ found Claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence

10

in the record. *Id.* The ALJ noted that Claimant's reports of severe limitations were inconsistent with treatment notes that documented "generally routine and conservative treatment," examinations that revealed relatively few abnormalities, and recent imaging that showed only mild degenerative changes; additionally, Claimant reported being satisfied with her pain management treatment and continued working until June 2015 despite abnormalities documented in MRIs from August 2008 and April 2011, she inconsistently reported the cause of her inability to work, treatment records indicated Claimant's back pain was under good control and she was able to exercise and engage in activities of daily living, and Claimant declined a pain management referral after her doctor refused to prescribe controlled substances. (R. 25–26).

First, Claimant disputes the ALJ's finding that she was satisfied with her pain management in March 2015 to the extent that she was not having any problems and points out that during this time period her employer had informed her she was taking too many sick days. Pl.'s Mem. [DE-22] at 19. S.S.R. 16-3p explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." 2016 WL 1119029, at *9. The converse also holds true, *id.*, and the records cited by the ALJ demonstrate that Claimant indicated satisfaction with her medications around the time she stopped working.

A February 12, 2015 treatment note indicated that Claimant was seen in follow-up for chronic pain in her lower back, right arm, and left and right legs; she was unable to afford the co-payment for a brace; she was taking her medications as directed; her medications were helpful without side effects; she was working full time; and she was "pleased with the current []

11

medications." (R. 335). Claimant was seen again in follow-up on April 9, 2015 and March 12, 2015, and she had no new complaints, reported her current medications were helpful, and continued working full time. (R. 338). Claimant stopped working in June 2015 (R. 18) and testified that it was mainly her back pain that prevented her from working (R.50). The ALJ accurately characterized the treatment notes and appropriately considered the inconsistency between her testimony that she stopped working in June 2015 mainly due to back pain and her reports to her doctor in February, March, and April 2015 that she was pleased with her pain medications and they were helpful without side effects. *See Ladda v. Berryhill*, 749 F. App'x 166, 171 (4th Cir. 2018) (concluding there was no error in the ALJ's determination that claimant's subjective statements were not entirely credible where the ALJ found, among other things, that the medical records did not show significant changes to medications or doses indicating to the ALJ that the claimant's treatment sufficiently managed his pain).

Second, Claimant contends the ALJ failed to appreciate her complex treatment history by finding her hearing testimony that she stopped working mostly due to her back pain to be inconsistent with her report to her doctor in May 2015 that her hypertension and vertigo kept her from working at times and prevented her from going to the doctor. Pl.'s Mem. [DE-22] at 19–22. On May 13, 2015, Claimant reported to her doctor that she received a notice from her employer indicating she had missed an average of two days per month of work for sickness since March 2014, she attributed the absences to high blood pressure or vertigo, she requested a note from her doctor for future absences without having to come to the doctor's office because she cannot drive when she has high blood pressure or vertigo, and the doctor indicated such an arrangement would be exceptional and that her excuse requests would be assessed on a case-by-case basis. (R. 357).

The ALJ accurately characterized Claimant's report to her doctor that she was missing work due to high blood pressure and vertigo and appropriately considered the inconsistency between that statement and her testimony that she had to stop working mostly due to her back pain. *See Ladda*, 749 F. App'x at 171 (finding the ALJ appropriately considered in the credibility assessment the claimant's conflicting statements at the hearing and to his physicians about whether his pain medications caused side effects). The ALJ did not ignore Claimant's multiple impairments and considered her testimony but found her hypertension to be nonsevere because it was effectively controlled by medication and found her vertigo not to be a medically determinable impairment because there were no clinical findings or other medical evidence to support the diagnosis. (R. 20–21, 24).

The ALJ also discussed Claimant's back and knee pain. (R. 25–27). The ALJ acknowledged that in August 2008, roughly seven years prior to her alleged onset date, an MRI indicated disc herniation and moderate to severe stenosis of the cervical spine, a repeat MRI in April 2011 was largely unchanged, and Claimant worked for about four years thereafter. (R. 25, 27, 261, 567–68). The ALJ indicated Claimant received pain management treatment, including epidural steroid injections and medications, prior to her alleged onset date and in March and April 2015 reported satisfaction with her pain management. (R. 25, 335, 338). The ALJ explained that Claimant had a gap in treatment from May 2015 through August 2015, during which time she stopped working and moved to South Carolina, and she established care with Dr. Towne in August 2015, was diagnosed with spinal stenosis and anxiety, and was prescribed Etodolac (an NSAID) for pain. (R. 26, 490–94). On follow-up later in August, Claimant complained her medication was not working and was prescribed Tramadol, and in September, Claimant complained of back

13

and neck pain and was prescribed Percocet. (R. 26, 476–89). The ALJ also noted an unremarkable consultative examination and mild findings on cervical and lumbar spine x-rays from September 2015, and in December 2015, her back pain was well controlled with her current medications, and she could exercise and perform activities of daily living with little difficulty. (R. 26, 440–41, 463).

In June 2016, Claimant reported she had experienced pain in her right leg for three weeks, her doctor expressed concern regarding long-term opioid use, Percocet was decreased, and Meloxicam was added for hip and back pain. (R. 26, 528–31). In July 2016, Claimant reported right hip and knee pain, stated she was doing well on her reduced dose of Percocet but that the Meloxicam caused a rash, her hips were normal on examination, her knees showed abnormalities of tenderness and pain with range of motion, and she was given a course of Prednisone. (R. 26, 525–27). Claimant returned monthly to her doctor for medication refills, Claimant was encouraged to exercise regularly, and her Percocet was not refilled beginning in December 2016. (R. 26, 499–22).

In January 2017, Claimant's chief complaint was that ibuprofen was not controlling her leg, arm, and back pain; her urine drug screen was positive for MDMA (Ecstasy), which she indicated was inaccurate and requested narcotics for pain; and she was prescribed Nabumetone (an NSAID) for pain. (R. 26–27, 495–98). In March 2017, Claimant presented to her doctor for a pain medication refill, reported swelling in her feet with Nabumetone, requested narcotic pain medication, and declined a referral to pain management after her doctor indicated narcotics would not be prescribed. (R. 27, 569–72). The ALJ also noted that on examination Claimant appeared to sit comfortably with no changing position or other sign of discomfort. (R. 27, 571). The ALJ appropriately considered that Claimant's unwillingness to pursue a pain management referral was

14

inconsistent with her complaints of persistent pain. The ALJ adequately explained his reasoning in not finding Claimant disabled based on this evidence, and it is not the court's role to re-weigh evidence. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589).

Third, Claimant contends the ALJ failed to consider her inability to afford treatment and misconstrued her gap in treatment from May 2015 to August 2015. Pl.'s Mem. [DE-22] at 22–23. Claimant argues that her unwillingness to pursue pain management was due to her inability to afford a specialist and that Dr. Towne provided Claimant's care through a local charitable community health practice, which is why Dr. Towne was not able to prescribe pain medication. *Id.* at 23. Claimant also points out that in September 2012, she indicated she could not get her medications until she received her paycheck. *Id.*

The ALJ must "consider and address reasons for not pursuing treatment that are pertinent to an individual's case," including whether a claimant is unable to afford treatment and lacks access to free or low-cost medical services. S.S.R. 16-3p, 2016 WL 1119029, at *10; *see Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of patent purposes of the SSA to deny benefits to someone because he is too poor to obtain medical treatment that may help him"). However, Claimant did not tell Dr. Towne that she could not afford to see a pain management specialist. (R. 569–72). While Claimant cites evidence from 2012 that she was having some difficulty affording medications, there is nothing in Dr. Towne's treatment notes from August 2015 through March 2017 to indicate that Claimant was unable to afford the medications Dr. Towne prescribed or could not afford to see a pain management specialist. (R. 454–535, 569–72). The record does not support Claimant's contention that Dr. Towne did not prescribe narcotic pain medication because Claimant was receiving care through a charitable community health practice.

15

Dr. Towne did prescribe Claimant narcotic pain medication from September 2015 until December 2016, when narcotics were discontinued. (R. 454–79, 495–535). Finally, there is no indication the ALJ misconstrued Claimant's gap in treatment from May 2015 to August 2015 or impermissibly used this evidence to discount Claimant's subjective statements. Rather, the ALJ simply explained that Claimant had a gap in treatment because she stopped working, moved, and then resumed treatment with a new provider. (R. 26, 490–94). Accordingly, the ALJ did not err in failing to consider Claimant's alleged inability to afford pain management treatment or in mentioning Claimant's short gap in treatment.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-21] is denied, Defendant's Motion for Judgment on the Pleadings [DE-23] is allowed, and the final decision of the Commissioner is affirmed. The Clerk is directed to close the case.

SO ORDERED, the 25th day of September 2019.

Robert B. Jones, Jr.
United States Magistrate Judge